# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD STREET, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-18-105-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Richard Street brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") under Title XVI of the Act, *id.* §§ 1381-1383f. The Court has reviewed the administrative record (Doc. No. 11, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties. The Commissioner's decision is affirmed. A separate judgment will be entered.

I.     PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his SSI application on December 22, 2014, and his application for DIB on December 30, 2014, alleging disability beginning January 1, 2012. R. 36, 267-74. The SSA denied his applications initially and on reconsideration. R. 126-

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

79. At Plaintiff's request, an administrative law judge ("ALJ") held hearings on August 23, 2016, and December 15, 2016, R. 54-96, 99-112, after which the ALJ issued an unfavorable decision on March 17, 2017. R. 33-35. The SSA Appeals Council found no reason to review the ALJ's decision. R. 1-6. The ALJ's unfavorable decision stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

The ALJ followed the five-step sequential evaluation process in determing Plaintiff was not entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability-onset date. R. 38. At step two, the ALJ determined that Plaintiff has severe impairments of learning disability, antisocial personality disorder, and anxiety disorder. R. 38.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 39-41.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") during the relevant period, based on all of his medically determinable impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember and carry out simple tasks; can make judg[]ment on simple work related decisions; can interact with supervisors and co-workers where contact is incidental and occasional to work performed, but is limited to no contact with the general public; can adapt to a work environment that does not involve frequent changes in daily routines or work duties.

2

R. 41.

Based on the hearing testimony of the vocational expert ("VE"), the ALJ determined at step four that Plaintiff can perform his past relevant work as a roustabout. R. 46. The ALJ also proceeded to make an alternative step-five determination, finding based on the VE's testimony that Plaintiff could perform other jobs existing in significant numbers in the national economy including hospital cleaner, auto detailer, and lot porter. R. 47.

Thus, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act. R. 47; *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

II.   STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in

weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

III. ANALYSIS

    A. Plaintiff's Assignments of Error

Though difficult to parse,[2] Plaintiff first contends the ALJ erred in failing "to include functionally distinct limitations in the RFC that were specific to his ability to interact with others" and that this failure "corrupted" the ALJ's finding that Plaintiff could perform his past relevant work. Pl.'s Br. (Doc. No. 20) at 8-21. Plaintiff also challenges the ALJ's development of the record. *See id.* at 22-23.

    B. The Relevant Record

Because there was no evidence in the record indicating Plaintiff had received any type of mental health treatment prior to filing his benefits applications in December 2014, the state agency ordered a psychological examination. R. 43, 132, 134, 140, 142, 314. In February 2015, Julie Wallace, PhD, conducted a Mental Diagnostic Evaluation ("MDE")

---

[2] Plaintiff's "specific arguments" within this first assignment of error "are not so easily identified." *Evans v. Colvin*, No. CIV-13-1202-R, 2014 WL 6827198, at *2 (W.D. Okla. Oct. 14, 2014) (R. & R.), *adopted*, 2014 WL 6828105 (W.D. Okla. Dec. 3, 2014). Plaintiff characterizes this argument as raising "Step Three, Four and Five Errors," but his briefing challenges only the ALJ's RFC determination. Pl.'s Br. at 2, 8; *see id.* at 8-21. Plaintiff also lists the ALJ's "failure to perform a proper credibility determination" as a point of error but entirely fails to develop this argument. *Id.* at 8. To obtain judicial review, it is insufficient to "suggest dissatisfaction" or merely mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). The Court has evaluated each challenge that is directly raised. Any argument not addressed herein is found to have been waived.

4

of Plaintiff. R. 393-99 (Ex. 5F). In the MDE, Dr. Wallace interviewed Plaintiff and administered a Montreal Cognitive Assessment test. Dr. Wallace made several findings in the MDE but expressly cautioned that her findings "are questionable" and "should be reviewed with caution" based upon Plaintiff's failure to cooperate, tendency to exaggerate, offering of "fictitious symptoms" and inconsistent responses, and apparent malingering and underperforming. R. 393, 397-98.

In denying Plaintiff's applications at the initial level, Laura Lochner, PhD, reviewed the MDE but found insufficient evidence to evaluate Plaintiff's claims "given his uncooperative attitude" with Dr. Wallace and the lack of any other medical evidence in the file. R. 134, 142. Plaintiff sought reconsideration, and in June 2015 Kara Rodgers, PsyD, conducted a second consultative examination, administered the Montreal Cognitive Assessment, and issued a Report (R. 434-38 (Ex. 9F)). In her Report, Dr. Rodgers noted that it appeared Plaintiff "was trying to disturb the examiner" and that his mental-status exam "was most likely invalid," as "[t]here was no evidence to indicate that [Plaintiff] was putting forth any effort on the exam." R. 435, 436. Dr. Rodgers further found that Plaintiff's self-reports suggested diagnoses that were inconsistent with his presentation. R. 436.

C. The Written Decision

At step three of the written decision, the ALJ evaluated the severity of Plaintiff's mental impairments by considering the Paragraph B criteria necessary to meet the requirements of Listing 12.08 (Personality Disorders) and other mental-disorder Listings. R. 39-41; *see* 20 C.F.R. pt. 404, subpart P app. 1, § 12.08(B); 20 C.F.R.§§ 404.1520a(d),

416.920a(d); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Based on the evidence in the record, the ALJ found Plaintiff: was moderately limited in his ability to understand, remember or apply information; was moderately limited in his ability to interact with others; was moderately limited in his ability to concentrate, persist, or maintain pace; and was mildly limited in his ability to adapt or manage himself. R. 39.[3]

The ALJ then assessed Plaintiff's RFC. The ALJ considered the opinions of both Dr. Wallace and Dr. Rodgers, as well as the other evidence in the record. R. 41-46. He assigned Dr. Wallace's opinion little weight and Dr. Rodgers' opinion partial weight. R. 45. The ALJ then formulated an RFC that included limitations relevant to Plaintiff's mental impairments, by specifying that Plaintiff:

- can understand, remember, and carry out only "simple" tasks;
- can make judgment on "simple" work-related decisions;
- can interact with supervisors and coworkers where contact is occasional and is incidental to the work performed;
- can have no contact with the general public; and
- can adapt to a work environment that does not involve frequent changes in daily routines or work duties.

R. 41.

---

[3] These four criteria replaced the longstanding 12.00 Mental Disorders Paragraph B criteria about two weeks after the ALJ issued his March 17, 2017 decision. *Compare* 20 C.F.R. pt. 404, subpart B app. 1, § 12.08(B) (2016), *and* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (2016), *with* 20 C.F.R. pt. 404, subpart B app. 1, § 12.08(B) (eff. Apr. 1, 2017), and 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (eff. Mar. 27, 2017). Neither party objects to the ALJ's use of the revised criteria and, as noted above, Plaintiff does not directly challenge the ALJ's step-three finding.

D. Plaintiff's Criticisms of the ALJ's RFC Determination

Plaintiff generally objects that the ALJ's RFC determination, despite prescribing numerous nonexertional limitations, fails to adequately account for Plaintiff's antisocial personality and severe mental impairments and therefore is not supported by substantial evidence. *See* Pl.'s Br. at 9-11.

First, Plaintiff argues that the ALJ erred in finding that Plaintiff was able to adapt to a work environment because neither Dr. Wallace nor Dr. Rodgers stated that Plaintiff could so adapt. *See id.* at 10. Relatedly, Plaintiff contends the ALJ failed to consider Dr. Rodgers' statement that if Plaintiff behaved the way he had at the consultative examination, during which she concluded that he was exaggerating his symptoms, he would be unable to maintain a job or be hired for a job. *See* Pl.'s Br. at 17-19; R. 436.

As an initial matter, Plaintiff's phrasing is misleading: the ALJ found that Plaintiff could adapt to a work environment *if* that environment "does not involve frequent changes in daily routines or work duties." R. 41. Further, an opinion as to whether Plaintiff could work is an infringement upon a determination reserved to the Commissioner and was not entitled to any "special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Russell v. Astrue*, 356 F. App'x 199, 203 (10th Cir. 2009).

Plaintiff next argues that the ALJ "missed the boat" by limiting Plaintiff to "simple" work rather than prescribing "functionally distinct" limitations pursuant to a function-by-function assessment. Pl.'s Br. at 11-13 (emphasis omitted) (citing SSR 96-8p, 1996 WL 374184, at *3-7). Again, Plaintiff mischaracterizes the RFC determination, which sets forth multiple distinct nonexertional limitations rather than attempting to use only "simple

work" as a "generic" catch-all, *see* R. 41. And Plaintiff offers no reason that limiting Plaintiff to understanding, remembering, and carrying out simple tasks, and to making simple work-related decisions, did not adequately account for the ALJ's finding that Plaintiff had moderate and mild restrictions in the areas of mental functioning in daily activities (specifically, that Plaintiff was moderately limited in his ability to understand, remember, or apply information; was moderately limited in his ability to concentrate, persist, or maintain pace; and was mildly limited in his ability to adapt or manage himself).

Plaintiff's primary complaint is that the RFC fails to adequately account for Plaintiff's difficulties in interacting with others. Specifically, Plaintiff argues that the examining psychologists "basically found an inability to work" but the ALJ rejected this finding without proper consideration. Pl.'s Br. at 10-20. The Court disagrees.

Because these psychologists examined Plaintiff in person in connection with his benefits applications, the ALJ was required to "evaluate," "consider," and "address" their medical opinions. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c); SSR 96-8p, 1996 WL 374184, at *7; *see also* 20 C.F.R. §§ 404.1502, 416.902 (2016). While an examining medical-source opinion "may be dismissed or discounted," such action "must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-8p, 1996 WL 374184, at *7.

It is true that both Dr. Wallace and Dr. Rodgers expressed doubt as to Plaintiff's ability to interact with others. But both examiners also expressly discounted their own

8

reports based upon Plaintiff's lack of cooperation and effort. *See* R. 393, 397-98, 434, 436. The ALJ credited certain findings of the psychologists as to Plaintiff's impaired abilities despite those doctors' misgivings. *See* R. 45 (ALJ noting that, although Dr. Wallace provided that Plaintiff's testing should "be reviewed with caution," the limitations reflected in Dr. Wallace's opinion were consistent with limitations included in the RFC); *id.* (ALJ noting that, although Dr. Rodgers "considered [Plaintiff's] presentation invalid or inconsistent with [Plaintiff's] allegations," the ALJ found the opinion to be "congruent with" the rest of the record, assigned the opinion partial weight, and indicated that limitations reflected in Dr. Rodgers' opinion were consistent with limitations included in the RFC).

The ALJ also discounted certain aspects of these psychologists' reports and the cognitive testing administered by them. *See* R. 45. The ALJ's reason for doing so is plain from the context of his discussion: that the psychologists, themselves, stated the test results were not valid. *See id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (finding that the ALJ reasonably refused to credit medical opinions that depended upon the claimant's veracity where the claimant had a propensity to exaggerate her symptoms and manipulate test results). And several of the "findings" Plaintiff suggests were improperly

rejected were not medical opinions but merely recitations of Plaintiff's self-reports of his symptoms and behavior. *See, e.g.*, Pl.'s Br. at 13-14, 15-16.[4]

The written decision thus reflects that the ALJ properly considered these psychologists' opinions and provided adequate explanation of that consideration. *See* R. 45; 20 C.F.R. § 404.1527(c)(1), (3), (4), (6); *id.* § 416.927(c)(1), (3), (4), (6); *Chapo*, 682 F.3d at 1291. The Court's obligation not to reweigh the evidence or substitute its opinion for the ALJ's is particularly relevant here, where the ALJ was tasked with the difficult duty of differentiating between which of Plaintiff's presented symptoms were real and which were exaggerated. The Court sees no error in the ALJ's RFC determination.

Plaintiff also contends the ALJ erred by failing to expressly weigh or consider the "opinion" of Kandi Rice, MA, finding that Plaintiff "has poor concentration, memory, and understanding, difficulties with rapid thought, and hallucinations." Pl.'s Br. at 21. But Ms. Rice did not issue any such finding. Rather, she included in her counseling notes that Plaintiff had self-reported "difficulties with memory, concentration, and understanding," "difficulties with rapid thought," and audio and visual hallucinations. R. 413, 421. As Ms. Rice was simply recording Plaintiff's own description of his alleged mental problems, the ALJ did not err in failing to weigh these statements. *Cf. Nichols v. Astrue*, 341 F. App'x 450, 453 (10th Cir. 2009) (noting that consideration of the factors presented in 20 C.F.R.

---

[4] Plaintiff cites to nonrecord items and counsel's unsupported conjecture as evidence of the ALJ's errors. *See, e.g.*, Pl.'s Br. at 9, 13, 14, 16 & n.1, 19. The Court's review is limited, however, to determining whether substantial evidence *in the record* supports the ALJ's decision and whether the ALJ applied the proper legal standards in denying Plaintiff's applications. *See Poppa*, 569 F.3d at 1169.

§§ 404.1527(c) and 416.927(c) is required only for evaluation of "medical opinions"); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence.").

E. The ALJ's Development of the Record

Plaintiff contends the ALJ had a duty to develop the record "if he thought the partial weight or the other opinions were unclear." Pl.'s Br. at 22. Plaintiff illogically argues that "[i]f the record were inconsistent," the ALJ could have ordered additional tests, and "*inconsistency* is part of [Plaintiff's] mental illness," as shown by the fact that Plaintiff "always exhibits aberrant behavior." *Id.*

The ALJ's decision nowhere indicates that the ALJ believed the record was inadequate. Rather, the ALJ thoroughly discussed the evidence of record and accurately noted that various medical personnel believed Plaintiff to be exaggerating his symptoms and malingering. R. 43, 44-47. For example, the ALJ allowed partial weight to Dr. Rodgers' June 2015 evaluation but expressly noted the discrepancy Dr. Rodgers found between Plaintiff's presentation and his allegations. R. 45. The ALJ did not suggest that any further testing was needed, and the Court may not reweigh such evidence. *See Bowman*, 511 F.3d at 1272.

Plaintiff's counsel in the administrative proceedings did not indicate that the available evidence was insufficient for the ALJ to address the relevant mental-condition issues. R. 56-58; *see Wall*, 561 F.3d at 1062-63 ("[A]n ALJ's duty to develop the record is *not* unqualified."); *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("[T]he ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the

11

record."). And Plaintiff fails to cite any "objective medical evidence in the record" to suggest that his mental condition "required further investigation before [the] ALJ could determine what functional limitations, if any, existed as a result of" this condition. *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (internal quotation marks omitted). Accordingly, Plaintiff's contention that the ALJ should have further developed the record is without merit.

## CONCLUSION

The ALJ's RFC was based on a thorough evaluation and analysis of the evidence regarding Plaintiff's mental impairments and supported by substantial evidence in the record. The decision of the Commissioner is affirmed. A separate judgment shall be entered.

IT IS SO ORDERED this 25th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge